# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00479-CV

---

**Quality Operating Company d/b/a Bob's Containers, Appellant**

**v.**

**OotBox, Inc., Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-23-005508, THE HONORABLE TODD T. WONG, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This appeal arises out of an agreement between Quality Operating Company d/b/a Bob's Containers ("Bob's") and OotBox, Inc. for Bob's to sell two shipping containers owned by OotBox for a commission. After Bob's sold one of the containers, it failed to pay OotBox its share of the proceeds from the sale and to turn over the second container after OotBox asked for its return. OotBox sued Bob's for breach of contract, civil theft, and conversion and moved for traditional summary judgment on all its claims. The trial court granted OotBox's summary-judgment motion without specifying the grounds and awarded OotBox actual damages, statutory damages, trial-court attorneys' fees, and contingent appellate attorneys' fees. On appeal, Bob's contends that OotBox failed to conclusively establish an essential element of its civil-theft claim and that the evidence was legally insufficient to support the award of contingent appellate attorneys' fees.

For the reasons explained below, we modify the judgment, and as modified, we affirm the judgment in part. We reverse in part because we conclude insufficient evidence supports the award of contingent appellate attorneys' fees, and we remand the case to the trial court for a redetermination of that issue consistent with this opinion.

## BACKGROUND[1]

Bob's is a Texas Corporation headquartered in Travis County, Texas. OotBox is a Delaware corporation headquartered in Franklin County, Ohio. Both Bob's and OotBox are in the business of manufacturing habitable structures out of shipping containers.

In April 2023, two of OotBox's Texas-based shipping containers ("Boxes") had reached the end of their lease and needed to be either sold or shipped back to OotBox's headquarters in Ohio. Bob's and OotBox agreed that Bob's would take possession of the Boxes and sell them. In an email exchange on April 26, 2023, the parties agreed that the sales price for the Boxes would be $18,000 each and that Bob's would earn a $3,000 commission on each Box sold.[2] In addition, Bob's would earn $1,250 for refurbishing each Box, including painting the Boxes, handling any leaks, and HVAC work. At that time, Bob's indicated that it had a buyer who had signed a contract for both Boxes but had not yet paid. On May 10, 2023, Bob's informed OotBox that "the deal died" because "[t]he customer ghosted after signing our contract."

_____

[1] The facts in this section are derived from the parties' pleadings and the uncontroverted summary-judgment evidence presented by OotBox.

[2] The negotiations in the email exchanges described below occurred between Robbie Friedman, one of OotBox's founders, and Robert (Bob) Balderas from Bob's.

On June 3, 2023, Bob's confirmed via email that one Box had sold that week and that its employees would send the details about the amount sold for, Bob's refurbishment cost, and when payment would be made. Bob's concluded its email by informing OotBox that it "cut[s] checks [on the] 1st and 15th" and said it appreciated OotBox's patience.

More than two weeks later, on June 21, 2023, OotBox still had not received payment for the sale of the Box. OotBox contacted Bob's early that morning, requesting that Bob's send the promised information on the sale that day and payment by June 30. Bob's replied that afternoon, directing two of its employees to send the sales contract to OotBox and create a spreadsheet report of sales data. Again, Bob's told OotBox that it was busy and asked for patience, assuring OotBox that it would not "big time" anybody. Later that evening, OotBox had still not heard anything from Bob's. OotBox reiterated its request for "a statement showing the payment we will be receiving on the 30th," noting "[t]his shouldn't take long."

Two days later, on June 23, 2023, OotBox followed up via email. Bob's replied that it had received OotBox's message but was declining to answer, repeating that it was busy, but offering, "Want a wire for 15[K] Monday?" Bob's noted that "[it] heard the refurb cost us around 2-3k" but still did not reveal the sales price for the Box. OotBox responded, "What was the sale price? Last time we spoke when the last sale fell through, you said the refurb cost was about $1000." Bob's never wired any money for the sale of this Box to OotBox.

On June 27, 2023, apparently in response to a request from OotBox to return the second Box to it, Bob's informed OotBox that it would not release payment for the first Box or deliver physical possession of the second Box until OotBox paid for the refurbishment of the Boxes, stating "[m]ust be settled up before Oots can pick up." In response, OotBox stated,

3

"Sure.  Based on email on 4/26, you confirmed 1250 for paint, recharge, clean and seal etc.  So that's the number we'll go with."  Bob's replied,

> Friend[,]
>
> You do not dictate how this goes.
>
> Look for detailed email by Friday.
>
> I need documents signed before any funds or containers moved.
>
> Listen man.  I get it.  I shoot from the hip a lot especially in the early days of company.  But I have learned a lot since[, and] also learn[ed] how not to let my amygdala dictate my decisions.  You want to get paid… I get it.  They [sic] money will be processed on next check run.  Then after releases signed come get yer box.
>
> Just be chill bud.

OotBox responded: "We agreed on $1250.  Don't start playing games here.  Send me what needs to be signed — I've been asking to see paperwork for 5 weeks or something.  Thanks."  Bob's responded:  "I'm done here.  All contracts now.  Xoxo[,]" and OotBox replied, "I'll take a look.  [C]an't promise to sign something I haven't seen until after the fact.  But if all looks good, no problem.  Have a good night[.]"  Bob's never provided documentation showing the sale of the first Box or paid OotBox for that Box.  Nor did Bob's return the other Box.

On September 12, 2023, OotBox, still awaiting payment from Bob's, had its attorney send Bob's a demand letter.  In the demand letter, OotBox summarized the parties' agreement as documented in the emails described above and also asserted that after OotBox requested the return of the unsold box, "Bob's demanded a mutual signing of release before it would remit payment for Box 1 and return Box 2.  The terms of the release are unacceptable to

4

OotBox and were never a condition of payment. OotBox is not going to sign a release prior to payment being remitted under these circumstances." OotBox demanded that Bob's provide either (1) payment of $13,750 for the Box that Bob's sold (the $18,000 sales price minus Bob's $3,000 commission and $1,250 fee for refurbishing) and the return of the other Box; or (2) payment of $31,750 ($13,750 for the sold Box, plus $18,000 for the other Box).

OotBox alleges that on September 25, 2023, it "saw an Instagram post from Bob in which Bob was still marketing the Boxes" and that "[t]he images that Bob posted also revealed that the Boxes had not been refurbished."[3]

On November 29, 2023, OotBox filed suit seeking damages for civil theft, *see* Tex. Civ. Prac. & Rem. Code §§ 134.001-.005 (Texas Theft Liability Act) (TTLA or Act), conversion, and breach of contract. Additionally, OotBox sought exemplary damages related to the civil-theft and conversion claims, *see* Tex. Civ. Prac. & Rem. Code § 41.003(a), and attorneys' fees, *see* Tex. Civ. Prac. & Rem. Code § 38.001. Although Bob's answered, it never provided initial disclosures, and according to OotBox, ignored all of OotBox's attempts to contact it. OotBox moved for traditional summary judgment on all its claims on March 12, 2024.

To support its traditional summary-judgment motion, OotBox offered (1) a declaration by the co-founder of OotBox that the facts of the motion and evidence affixed to the summary-judgment motion were true and correct; (2) emails between OotBox and Bob's from April 25, 2023 to June 27, 2023; (3) OotBox's September 12, 2023 demand letter to Bob's; (4) screenshots of September Instagram post by Bob's; and (5) declarations by two separate attorneys attesting to their fees and, for one of them, what he estimated the attorneys' fees would

---

[3] OotBox included screenshots of the Instagram posts as summary-judgment exhibits.

be to defend a judgment in OotBox's favor if appealed by Bob's. In its motion, OotBox laid out the elements of each of its claims and explained how the evidence it submitted supported summary judgment in its favor on each claim.

Bob's did not file a response to OotBox's motion and presented no evidence contradicting the evidence submitted by OotBox. After a hearing, the trial court granted OotBox's motion on April 26, 2024, without specifying the grounds for its judgment. The summary judgment awarded OotBox full payment for both Boxes, plus statutory damages in the amount of $1,000.00, and attorneys' fees, including separate contingent appellate attorneys' fees for appeal to the court of appeals and to the Texas Supreme Court.

This appeal followed.

## ANALYSIS

In two issues, Bob's challenges the trial court's summary judgment. Bob's contends that the trial court erred by (1) granting summary judgment on OotBox's TTLA claim because OotBox did not present sufficient evidence to establish the element of intent to deprive as a matter of law and (2) awarding OotBox contingent appellate attorneys' fees because there is legally insufficient evidence to support the award.

## I.    Standard of Review

We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor."[4] *First Sabrepoint Cap. Mgmt., L.P. v. Farmland Partners Inc.*, 712 S.W.3d

---

[4] The Texas Supreme Court recently amended Texas Rule of Civil Procedure 166a, but "[o]ther than the deadline changes, Rule 166a's rewrite is not intended to substantively change

6

75, 84 (Tex. 2025) (quoting *Weekley Homes, LLC v. Paniagua*, 691 S.W.3d 911, 915 (Tex. 2024)). In a traditional summary-judgment motion, the movant has the burden to prove that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Gill v. Hill*, 688 S.W.3d 863, 868 (Tex. 2024). When a plaintiff moves for summary judgment, it must conclusively establish each essential element of its claim, even when the defendant fails to respond to the summary-judgment motion. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). On appeal, a nonmovant who fails to respond to the motion may contend only "that the grounds expressly presented to the trial court by the movant's motion are insufficient *as a matter of law* to support summary judgment." *Id.*

When a trial court's order granting summary judgment does not specify the grounds on which its order is based, the appealing party must negate each possible ground upon which the judgment could have been based. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022) (citing *Malooly Bros. v. Napier*, 461 S.W.2d 119, 120-21 (Tex. 1970); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied)). Absent such a showing, we must uphold the summary judgment on any unchallenged ground. *Jarvis*, 298 S.W.3d at 313; *see also Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) ("Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial

---

the law." Tex. R. Civ. P. 166a cmt., 89 Tex. B.J. 286, 292 (2026). The amendments renumbered the rule's provisions. *See id.* at 289-292. Because the amendments apply only to summary-judgment motions filed on or after March 1, 2026, and the filing of OotBox's summary-judgment motion preceded the amendments, we refer to the provisions of Rule 166a in effect at the time. *See id.*

court and preserved for appellate review are meritorious."). This rule applies to particular claims disposed by summary judgment. *Brown v. Hensley*, 515 S.W.3d 442, 445-46 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also, e.g.*, *DeWolf v. Kohler*, 452 S.W.3d 373, 388 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (affirming summary judgment on one of several claims because appellant "does not challenge the summary judgment on this claim on any grounds").

## II.     OotBox's Claims for Breach of Contract and Conversion

We first address the failure of Bob's to challenge on appeal the trial court's grant of summary judgment on OotBox's breach-of-contract and conversion claims and instead to challenge the grant of summary judgment only on the TTLA claim. "When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion." *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). When an appellant fails to challenge possible grounds on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged grounds. *See id.*; *Malooly Bros.*, 461 S.W.2d at 121 ("The judgment must stand, since it may have been based on a ground not specifically challenged by the plaintiff and since there was no general assignment that the trial court erred in granting summary judgment."); *Young v. JP Morgan Chase Bank, N.A.*, No. 03-15-00261-CV, 2016 WL 4091294, at *3 (Tex. App.—Austin July 28, 2016, pet. ref'd) (mem. op.) (affirming summary judgment based on unchallenged ground). In this case, OotBox's breach-of-contract claim and its conversion claim each independently support the trial court's award of actual damages in the amount of $31,750. Thus, the failure of Bob's to challenge any of the grounds upon which OotBox sought summary judgment for these

two claims requires us to affirm the trial court's summary judgment that held Bob's liable for $31,750 in actual damages.

## III.    Texas Theft Liability Act Claim

Bob's seeks to have the Court "reverse the portion of the trial court's final summary judgment granting [OotBox's] Texas Theft Liability Act claim (including the corresponding $1,000.00 in statutory damages)." As an initial matter, we note that the trial court's judgment erroneously lists the statutory-damages statute as Texas Civil Practice and Remedies Code Section 41.003(a), which governs exemplary damages.[5] *Compare* Tex. Civ. Prac. & Rem. Code § 41.003(a) (allowing exemplary damages to "be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence"), *with id.* § 134.005(a) (allowing plaintiff in TTLA suit "who has sustained damages resulting from theft" to recover "from a person who commits theft, the amount of actual damages found by the trier of fact and, in addition to actual damages, damages awarded by the trier of fact in a sum not to exceed $1,000"). The correct citation is to Texas Civil Practice and Remedies Code Section 134.005(a). Thus, even though neither party raised the issue on appeal, we reform the judgment by changing the phrase "TEX. CIV. PRAC. & REM. CODE § 41.003(a)" to "Tex. Civ. Prac. & Rem. Code § 134.005(a)." *See Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd) ("The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court. The appellate court may act sua sponte

---

[5] The trial court's judgment states, "Plaintiff is granted statutory damages in the amount of $1,000.00 pursuant to TEX. CIV. PRAC. & REM. CODE § 41.003(a)."

and may have the duty to do so." (citations omitted)); *see also* Tex. R. App. P. 43.2(b) (establishing that appellate courts may "modify the trial court's judgment and affirm it as modified). "Appellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc where the evidence necessary to correct the judgment appears in the record." *Asberry*, 813 S.W.2d at 529; *see also Morris v. Blangger*, 423 S.W.2d 133, 134 (Tex. App.—Austin 1968, writ ref'd n.r.e.) (reforming summary judgment from "without prejudice" to "with prejudice" because court has duty to terminate litigation where nothing in record indicates that appellant could successfully plead cause of action); *Gipson v. State*, No. 03-12-00808-CR, 2015 WL 661277, at *6 (Tex. App.—Austin Feb. 12, 2015, pet. ref'd) (mem. op., not designated for publication) (modifying judgment sua sponte to list correct statute for offense).

To recover statutory damages under the TTLA, the plaintiff must establish that it "sustained damages resulting from theft." Tex. Civ. Prac. & Rem. Code § 134.005(a), and "a person who commits theft is liable for the damages resulting from that theft," *id.* § 134.003(a). Thus, we must address the argument of Bob's that OotBox did not conclusively prove the intent-to-deprive element of its TTLA claim to determine whether OotBox established Bob's liability for statutory damages under the Act.

The Act imposes civil liability on any person who commits theft as defined by Chapter 31 of the Texas Penal Code. *Id.* §§ 134.002(2) (defining "theft"), .003(a) (imposing liability). A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code § 31.03(a); *see also* Tex. Civ. Prac. & Rem. Code § 134.002 ("Person" means an individual, partnership, corporation, association, or other group, however organized."). Bob's asserts that intent to deprive must exist at the time the defendant

appropriated the property and that the "record is wholly silent on any proof to support [its] intent to deprive."

We disagree. The record contains ample evidence of its intent to deprive OotBox of the proceeds for the sale of the first Box and of the second Box. "The relevant 'intent to deprive' is the person's intent at the time of the taking." *See McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 906 (Tex. App.—Dallas 2014, pet. denied) (citing *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012)). And "[t]he intent to deprive can be inferred from the words and acts of the person." *Id.* at 907. Because under the Penal Code, "[a]ppropriation of property is unlawful if . . . it is without the owner's effective consent," Tex. Penal Code § 31.03(b)(1), the actions of Bob's after OotBox withdrew its consent for Bob's to retain possession of the sale proceeds and the second Box are what is pertinent here. "[I]n theft cases[,] the intent to deprive is often proven by actual deprivation." *Draper v. State*, 539 S.W.2d 61, 68 (Tex. Crim. App. 1976); *see also Wirth*, 361 S.W.3d at 697 (stating that courts should review "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act" when analyzing evidentiary sufficiency (quoting *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *Thompson v. State*, No. 03-20-00080-CR, 2021 WL 1418987 at *3 (Tex. App.—Austin April 15, 2021, pet ref'd) (mem. op, not designated for publication) ("In a theft case, the intent to deprive the owner of his property may be inferred from actions such as failing to return property to its rightful owner . . . .").

OotBox's uncontroverted summary-judgment evidence established that the following events occurred:

11

- June 3, 2023 email from Bob's to OotBox confirmed that one of the Boxes had been sold and suggested that Bob's would remit payment to OotBox by June 15 ("We cut checks 1st and 15th.").

- Bob's failed to remit payment on June 15, leading OotBox to ask for payment by June 30 on June 23 for the Box that Bob's purportedly sold.

- Although Bob's offered to OotBox on Friday, June 23 to pay by wire on Monday, June 26, Bob's failed to pay.

- On June 27, Bob's refused to deliver payment for the first Box or physical possession of the second Box until OotBox paid more for the refurbishment than the amount previously agreed by the parties.

- Bob's also refused to deliver payment for the first Box or physical possession of the second Box until OotBox signed a release that was not a condition of the parties' initial contract.

- Bob's failed to respond to the September 2023 demand letter sent by OotBox's attorney.

- Bob's continued to market at least one of the Boxes on Instagram in late September.

Here, OotBox presented uncontroverted evidence that Bob's sold one of the Boxes, retained all the proceeds, and never returned the other Box; ignored OotBox's demand letter; and continued to market a Box on social media. *Cf., e.g.*, *McCullough*, 435 S.W.3d at 907 (holding that defendant's failure to return money owed and refusal to respond to repeated requests for information was legally sufficient evidence of intent to deprive supporting jury verdict on civil-theft claim). Because OotBox conclusively established that Bob's actually deprived OotBox of its property after OotBox withdrew its consent to possession by Bob's, thus proving its intent to deprive, the trial court did not err by granting summary judgment and awarding statutory damages under the TTLA against Bob's. We overrule its first issue.

## IV.    Contingent Appellate Attorneys' Fees

In its second issue, Bob's challenges the trial court's award to OotBox of contingent appellate attorneys' fees.  The trial court awarded OotBox the following amounts if OotBox successfully defends the judgment on appeal: $20,000 for appeal to this Court and $20,000 for responding to a petition for review in the Texas Supreme Court with an additional $15,000 if review is granted.  Bob's contends that OotBox did not provide testimony about "the services it reasonably believes will be necessary to defend the appeal" or "a reasonable hourly rate for those services," as required under *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020), and therefore, the evidence is legally insufficient to support the fee award.

When we review a trial court's award of attorneys' fees, we must ensure the record contains sufficient evidence to support the award.  *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 505 (Tex. 2019) (concluding record lacked sufficient evidence to support trial court's award of attorneys' fees).  The burden of proof is on the party seeking attorneys' fees to supply enough facts to support the reasonableness of the amount awarded.  *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762-63 (Tex. 2012).  We must reverse the fee award if there is insufficient evidence in the record to uphold it.  *See id.* at 763-64.

OotBox's attorney submitted a declaration with the summary-judgment motion in support of OotBox's request for attorneys' fees.  He attested to his experience as follows:

> Since being licensed, I have practiced in commercial litigation, including litigating contracts concerning goods and services.
>
> . . . .
>
> I am familiar with the attorney's fees normally and customarily charged in this area for litigation of the type at issue in this lawsuit.

13

I have experience prosecuting and defending disputes related to breaches of contracts and loans in this area and across the state, including the work required and fees incurred with these sorts of disputes.

. . . .

In the event that default judgment is granted, and Defendant makes an appeal to the court of appeals, I estimate the attorney's fees incurred to be $20,000.00.

In the event this case is appealed to the Supreme Court of Texas, attorney's fees in the amount of $20,000.00 would be a reasonable fee for a petition for review if any judgment is not reversed and an additional $15,000.00 would be a reasonable fee if review is granted.

This opinion is based on my personal knowledge of the specific issues and preparation required in this case and my review of my firm's invoices to my client, in addition to my experience litigating issues related to loan transactions.

(Paragraph numbering omitted.)

In *Yowell*, the Texas Supreme Court clarified what type of expert opinion testimony a party seeking contingent appellate attorneys' fees must provide. *See* 620 S.W.3d at 355. The court explained that expert opinion testimony projecting appellate fees is required because "[t]here is no certainty regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." *Id.* However, the court cautioned that "this uncertainty does not excuse a party seeking to recover contingent appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.* As an example of a case holding that there was sufficient evidence to support the award of appellate attorneys' fees, the court cited *State & County Mutual Fire Ins. Co. ex rel. Southern United General Agency of Texas v. Walker*, 228 S.W.3d 404, 409-10 (Tex. App.—Fort Worth 2007, no

14

pet.). *Id.* at 355 n.12 (summarizing *State & County* case as holding that there was sufficient evidence to support contingent appellate attorneys' fees when attorney presented uncontradicted testimony about what he believed "a reasonable attorney's fee would be for the services that would 'necessarily need to be rendered' in the event of an appeal" after testifying to his familiarity with reasonable charges for attorneys' fees in area).

After *Yowell* was issued, our Court and some of our sister courts have found an attorney's testimony that lacks detail about the tasks that would be necessary to defend an appeal before this Court or for any proceedings before the supreme court and that only attests as to lump sums for the different appellate stages, based on the attorney's experience and in his opinion, is legally insufficient to support an award of contingent appellate attorneys' fees. *See, e.g.*, *Gordon v. Gordon*, No. 03-22-00454-CV, 2024 WL 2429995, at *12 (Tex. App.—Austin May 24, 2024, pet. denied) (mem. op.); *Jimmie Luecke Children P'ship, Ltd. v. Droemer*, No. 03-20-00096-CV, 2022 WL 243162, at *8 (Tex. App.—Austin Jan. 27, 2022, pet. denied) (mem. op.) (collecting cases). Although OotBox's attorney's affidavit provides some additional detail about his "personal knowledge of the specific issues and preparation required in this case and [his] review of [his] firm's invoices to [his] client," in addition to his "experience prosecuting and defending disputes related to breaches of contracts and loans in this area and across the state, including the work required and fees incurred with these sorts of disputes," bringing it closer to the testimony found sufficient in *State & County*, we conclude it is nevertheless insufficient under our post-*Yowell* decisions. Similar to the affidavit in *Gordon* and other cases, the declaration does not provide detail about specific tasks necessary for an appeal and only provides testimony as to three lump sums for the progressive stages of an appeal. *See, e.g.*, *Mustafa v. Asim*, No. 03-23-00018-CV, 2024 WL 5241054, at *12-13 (Tex. App.—Austin Dec. 20, 2024, no pet.)

15

(mem. op.) (explaining that both this Court and sister courts "have reversed awards of attorney's fees that were based on this same type of attorney testimony that states the estimated amounts for handling each phase of an appeal without identifying the services the attorney reasonably believes will be necessary"). It lacks testimony about "the *services* [the attorney] reasonably believes will be necessary to defend the appeal and a reasonable hourly rate *for those services*." *Yowell*, 620 S.W.3d at 355 (emphases added). Accordingly, we conclude that the trial court's award of conditional appellate attorneys' fees is not supported by legally sufficient evidence.

Because the trial court's award of conditional appellate fees is not supported by legally sufficient evidence, it must be reversed and remanded for redetermination. *See, e.g.*, *Gordon*, 2024 WL 2429995, at \*12 (reversing award of contingent appellate attorneys' fees based on similar opinion testimony for legally insufficient evidence and remanding issue for redetermination). We sustain the second issue presented by Bob's.

## CONCLUSION

We reform the judgment to cite to Texas Civil Practice and Remedies Code Section 134.005(a), which governs statutory damages under the TTLA. We overrule the issue challenging the trial court's summary judgment on the intent-to-deprive element, and therefore, we affirm the statutory damages award. We reverse the portion of the trial court's judgment awarding contingent appellate attorneys' fees and remand to the trial court for redetermination of those fees. Accordingly, we affirm in part the judgment as modified, and we reverse in part the trial court's judgment on contingent appellate attorneys' fees and remand to the trial court for redetermination of that issue.

_____

Gisela D. Triana, Justice

16

Before Justices Triana, Theofanis, and Crump

Modified, and as Modified, Affirmed in Part; Reversed and Remanded in Part

Filed:  July 10, 2026